IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 20, 2004 Session

## CAROL KNITTIG HAZEN v. JOHN THURSTON HAZEN

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001566-01     James F. Russell, Judge**

_____

**No. W2003-00778-COA-R3-CV - Filed June 14, 2004**

_____

Wife filed the present divorce action seeking, *inter alia*, alimony.  The trial court awarded
Wife alimony *in futuro* based upon a perceived need rather than a demonstrative need.  For the
following reasons, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and
Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S.,
and HOLLY M. KIRBY, J., joined.

Charles W. McGhee, Memphis, Tennessee, for the appellant, John Thurston Hazen.

Charles E. Hodum, Collierville, Tennessee, for the appellee, Carol Knittig Hazen.

**OPINION**

John Hazen (Husband) and Carol Hazen (Wife, or collectively with Husband as the
parties) married on December 16, 1978.  The parties had four children, only two of which were
minors at the time of trial.  Wife filed for divorce in March of 2001 alleging as grounds
inappropriate marital conduct and irreconcilable differences.  Trial for the divorce occurred on
January 14 and 15, 2002.  At trial, the parties stipulated to the grounds for divorce pursuant to
Tenn. Code Ann. § 36-4-129 (2001).  Further, Wife asked the trial court for an award of
rehabilitative alimony.  On January 16, 2002, the trial court rendered its ruling from the bench.
In its ruling, the trial court found that Husband has a bachelor of science degree and at the time of
marriage was a lieutenant in the United States Air Force.  After approximately nine years in the
Air Force, Husband joined the F.B.I. where he currently works.  Husband's jobs have required
the parties to move from Little Rock, Arkansas, to Anchorage, Alaska, then back to Little Rock,
then to Memphis, Tennessee, then to Fairfield, California, and ultimately back to Memphis in
1993.  Based upon Husband's Rule 14(C) Affidavit showing a monthly net income of $4,660.63
and monthly expenses of $6,143, including $2,200 in child support, the trial court found a

monthly deficit for Husband of approximately $1500. After carefully reviewing Husband's expenses, the trial court stated that it "simply cannot find any area where [Husband] can trim his monthly expenses."

The trial court found that Wife holds a bachelor's degree and a master degree. The trial court noted that during the duration of the parties' marriage, Wife has "found work either full-time or part-time in her field of speech pathology." At the time of trial, Wife was earning $67,000 annually in the field of speech pathology. Based upon the proof presented at trial, the trial court believed that Wife's contract for employment would extend for at least three years "until a time that the Court notes there has been a public announcement that [the center where Wife works] is expected to close." Based upon Wife's Rule 14(C) Affidavit, the trial court found that Wife had net monthly income of $3,963.53. In her affidavit of expenses, Wife claimed monthly expenses of $7,432.34. However, the trial court found Wife's expenses excessive and reduced her expenses by $1,291. The trial court engaged in the following analysis to determine Wife's need:

> When the total monthly expense claim is adjusted by that amount of money, that is $1,291 subtracted from [the claimed monthly expenses of] $7,432, the adjusted and corrected [expense] would be $6,141 in terms of total monthly expenses. When the correct net monthly income of $3,962 is subtracted from that figure, we get a monthly deficit of $2,179 per month. Now, one must consider that the $2,200 in child support should be factored in. Of course, when the $2,200 per month in child support as before the Divorce Referee and the now $2,264 in child support is applied to that claimed monthly deficit of $2,179 there is no deficit.

The trial court denied Wife's request for rehabilitative alimony. However, despite its' finding that "[t]here is no demonstrative need currently based" upon Wife's income and expenses, the trial court awarded Wife alimony *in futuro* in the monthly amount of $250.00. In its final decree of divorce, the court ordered that the alimony payments commence after the sale of the parties' rental property as the court noted that Husband did not have the present ability to pay. Husband timely filed his notice of appeal.

### Issue Presented

Husband raises the following issue for our review:

Whether the trial court erred in awarding Wife alimony *in futuro*.

### Standard of Review

Our review of a trial court's conclusions on issues of law is *de novo*, with no presumption

of correctness. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002). Our review of a trial court's findings on issues of fact is *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kendrick*, 90 S.W.3d at 569. In reviewing the trial court's award of alimony, "[w]e must presume the trial court's decision is correct unless the evidence preponderates against it." *Hawkins v. Hawkins*, 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994) (citing *Luna v. Luna*, 718 S.W.2d 673, 675 (Tenn. Ct. App. 1986); *Duncan v. Duncan*, 686 S.W.2d 568, 571 (Tenn. Ct. App. 1984)).

## Law and Analysis

Husbands argues that the trial court erred in awarding Wife alimony *in futuro* based upon a "perceived" need. Tennessee Code Annotated § 36-5-101(d) (2001) governs spousal support awards and provides:

> (d)(1) . . . In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
> (A) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (G) The separate assets of each party, both real and personal, tangible and intangible;
> (H) The provisions made with regard to the marital property as defined in § 36-4-121;
> (I) The standard of living of the parties established during the marriage;
> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1) (2001).[1] Further, "[t]he two most important factors in the award of alimony are [the obligee's] need and [the obligor's] ability to pay." *Elliot v. Elliot*, 825 S.W.2d 87, 91 (Tenn. Ct. App. 1991) (citing *Lancaster v. Lancaster*, 671 S.W.2d 501 (Tenn. Ct. App. 1984)).

In this case, the trial court considered the pertinent statutory factors in its award of alimony *in futuro*. First, the trial court stated that "[t]here is no demonstrative need currently based simply and solely upon monthly incomes of [Husband's] versus [Wife's] income, including the amount of money that will be paid to her by [Husband] for child support. The court then moved on to "other relevant factors to be considered." Second, the court considered the duration of the marriage, twenty-three years. Third, the court considered the age of the parties and noted that at Wife's age of 46, "she will be considering retirement or ought to be considering retirement . . . [and] as a practical matter that women who begin to approach the age of 50 begin to show signs of some physical restraint." Fourth, the trial court noted that Wife has custody of the parties' minor child. Fifth, the trial court noted that the parties had "enjoyed a relatively good and comfortable standard of living." Sixth, in considering the intangible contributions made by the Wife, the trial court stated that "[Wife] has been deprived of establishing a long-term career stability and she has been deprived of an opportunity to establish a more complete retirement program for herself because of [Husband's] various career moves."

While consideration of the factors mentioned by the trial court militates towards an award of alimony *in futuro* for Wife, the lack of evidence in the record to support those factors along with the lack of Wife's need and Husband's inability to pay leads this Court to conclude that such an award is error. While the court mentioned that Wife was near retirement age, there is nothing in the record to indicate Wife's present desire for retirement beyond that she will eventually retire. The trial court also mentioned that "as a practical matter that women who begin to approach the age of 50 begin to show signs of some physical restraint." However, there was no proof offered by Wife of any signs of present physical restraint or that she expected to experience any in the future. Further, the trial court, in calculating Wife's need, found that she actually has a slight monthly surplus of $21.19[2] while Husband has a monthly deficit of $1,500. Additionally, the trial court stated that it "simply [could not] find any area where [Husband] can trim his monthly expenses." In an attempt to lessen Husband's monthly expenses, the trial court ordered that the alimony payments commence after the sale of the parties' rental property. However, Husband's Rule 14(C) Affidavit reveals that his monthly expenses for the rental

---

[1] Sections 36-5-101(d)(1) and (e) were amended in 2003 but are inapplicable to this case as the final judgment was entered before the effective dates of the amendment. Tenn. Code Ann. § 36-5-101 (2003) (amendments).

[2] The trial court arrived at this number by subtracting Wife's net monthly salary, $3962.53, from the adjusted expenses figure, $6,141.34, and then adding the monthly child support payment, $2,200.

property were $325.00.[3]  Taking out this monthly expense would still leave Husband with a monthly deficit of $1,175.00.  As previously mentioned, "[t]he two most important factors in the award of alimony are [the obligee's] need and [the obligor's] ability to pay." *Elliot v. Elliot*, 825 S.W.2d 87, 91 (Tenn. Ct. App. 1991) (citing *Lancaster v. Lancaster*, 671 S.W.2d 501 (Tenn. Ct. App. 1984)).  Accordingly, we hold that the evidence, specifically Wife's lack of need and Husband' inability to pay, preponderates against the trial court's award of alimony *in futuro* to Wife.

### Conclusion

In light of the foregoing, we reverse the trial court's award of alimony *in futuro* to Wife. Costs of this appeal are taxed to the Appellee, Carol Knittig Hazen, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[3]The $325.00 figure is reached by subtracting the monthly rental income, $475.00, from the rental's total monthly expense, $800.00.