IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 17, 2011 Session

## MARY ANNE OSESEK v. MICHAEL W. OSESEK

**Appeal from the Chancery Court for Sumner County**
**No. 2006D128     Tom E. Gray, Chancellor**

_____

**No. M2011-00984-COA-R3-CV - Filed March 6, 2012**

_____

Husband filed a petition to terminate or modify the amount of alimony *in futuro* he was obligated to pay, asserting that a post-divorce decrease in his income as well as the fact that Wife secured employment after the divorce constituted substantial and material changes in their circumstances which warranted the elimination of or a reduction in the amount of alimony. The trial court held that, while the loss of Husband's job was not anticipated, there was not a substantial and material change of circumstances because Husband had other assets from which to continue to make the alimony payments; the court accordingly dismissed the petition and awarded Wife her counsel fees. Husband appeals the dismissal of the petition and award of attorney fees to Wife. We affirm the holding that Husband's assets are available to satisfy his alimony obligation and the award of attorney fees to Wife. We vacate the dismissal of the petition and remand for further consideration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Vacated in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Stanley A. Kweller and Robert L. Jackson, Nashville, Tennessee, for the Appellant, Michael W. Osesek.

Mary Arline Evans and Charles R. Niewold, Nashville, Tennessee, for the Appellee, Mary Anne Osesek.

**OPINION**

Michael Osesek initiated this proceeding to terminate or modify his obligation to pay alimony *in futuro* of $5,500 per month to his former wife. As grounds for the requested

relief, Mr. Osesek alleged that, at the time of the divorce, he was employed and earning in excess of $250,000 annually but, since the divorce, his job had been eliminated and he had been unable to find other employment. He also alleged that Ms. Osesek had secured part-time employment since the divorce. He asserted that his loss of employment was a substantial and material change in circumstances which reduced his ability to pay alimony and that Ms. Osesek's employment reduced her need for alimony. Ms. Osesek answered the petition, denying the salient allegations thereof. Following an unsuccessful attempt to mediate a resolution, the trial court held a hearing as a result of which it dismissed the petition; the court subsequently awarded wife $8,200 for attorney fees incurred in defense of the petition. Mr. Osasek appeals.

STANDARD OF REVIEW

A trial court's decision regarding modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors." *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). "[T]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006)). We decline to second-guess a trial court's decision to modify support absent an abuse of discretion. *Robertson v. Robertson*, 76 S.W.3d 337, 343 (Tenn. 2002). Applying the abuse of discretion standard "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives," *Gonsewski,* 350 S.W. 3d at 105, and the trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). We review the trial court's specific findings of fact *de novo* in accordance with Tenn. R. App. P. 13(d).

DISCUSSION

Alimony *in futuro* is intended to provide support on a long-term basis until the death or remarriage of the recipient. Tenn. Code Ann. § 36-5-121(f)(1). Such an award remains in the court's control for the duration of such award, and "may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). A party seeking a modification of alimony *in futuro* must satisfy two requirements. First, the party must establish that there has been a change in circumstances that is substantial and material since the entry of the original support decree. *Bogan v. Bogan*, 60 S.W.3d 721, 727–28 (Tenn.

2001) (citing Tenn. Code Ann. § 36-5-101(a)(1)). Second, the person seeking modification must establish that modification is warranted. *See Byrd v. Byrd*, 184 S.W.3d 686, 691 (Tenn. Ct. App. 2005) (citing *Freeman v. Freeman*, 147 S.W.3d 234, 239 (Tenn. Ct. App. 2003)). "Whether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court." *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) (citing *Wilkinson v. Wilkinson*, 1990 WL 95571, at *4 (Tenn. Ct. App. July 12, 1990)).

A.  Substantial and Material Change of Circumstances

Mr. Osesek asserts that the trial court erred in finding that there was not a substantial and material change of circumstances and that the change in his employment situation affected his ability to pay.  He also contends that the fact that Ms. Osesek secured employment after the divorce reduces her need for support and that she received assets in the divorce which she can use to meet her financial needs.  We address these contentions in turn.

A change in circumstances is "substantial" when it significantly affects either the obligor's ability to pay or the obligee's need for support. *Bogan*, 60 S .W.3d at 728 (citing *Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991)).  A change in circumstances is "material" when the change occurs since the date the alimony was ordered, and the change was not foreseeable at the time of the final decree or within the contemplation of the parties when they entered into a property settlement agreement. *Bogan*, 60 S.W.3d at 728 (citing *Watters*, 22 S.W.3d at 821); *see also Elliott v. Elliott*, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1992).

In its oral ruling, the court stated in pertinent part:

> The husband -- or excuse me -- former husband, Mr. Osesek, was terminated from his employment on July the 9th, 2010.  He got some severance pay.  The severance pay ran out in early December, 2010.
> Now the loss of his job was not anticipated at the time of the divorce. And although he has made strong effort, he has not yet obtained employment, and the Court does say that he has made an effort.
> * * *
> The Court finds that even though making these findings, that there has not been a substantial and material change of circumstances.  The assets of Mr. Osesek are sufficient to continue to make the payment of alimony.

Applying the definitions of "material" and "substantial" referenced above, it is apparent that the trial court found that the change in Mr. Osesek's circumstances was

"material" but not "substantial" for purposes of modifying the award of alimony. We agree that the change in Mr. Osesek's circumstance was "material" within the meaning of Tenn. Code Ann. § 36-5-121(f)(2)(A): the record is clear and undisputed that his employment was terminated through no fault of his own in July 2010, and that the termination of his employment was not anticipated at the time of the divorce. The issue is whether the court properly considered assets other than income in its determination of whether Mr. Osesek made the requisite showing of a "substantial" change.

In determining whether a proposed modification is justified, the court utilizes the same factors employed in considering an initial award of alimony, set forth at Tenn. Code Ann. § 36-5-121(i).[1]  *Bogan*, 60 S.W.3d at 730; *Wright v. Quillen*, 83 S.W.3d 768, 773 (Tenn. Ct. App. 2002); *Threadgill v. Threadgill*, 740 S.W.2d 419, 422–23 (Tenn. Ct. App. 1987); *Hasty v. Hasty*, No. M2002-01756-COA-R3-CV, 2003 WL 21954190, at *2–3 (Tenn. Ct. App. Aug. 15, 2003). Tenn. Code Ann. § 36-5-121(i)(7) instructs that "[t]he separate assets of each party, both real and personal, tangible and intangible" is a factor to be considered. In making the determination that Mr. Osesek did not show that the change was substantial, the

---

[1] The factors are:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property, as defined in § 36-4-121;
(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).

court identified his assets[2] as available to meet his alimony obligations.  While he does not contest the court's statement that he has assets sufficient to continue to make alimony payments, Mr. Osesek contends that he should not have to spend down those assets in order to have his alimony obligation modified.

In light of the plain language of Tenn. Code Ann. § 36-5-121(i)(7) and applicable case law, we must reject his contention.  In *Bowman v. Bowman*, 836 S.W.2d 563 (Tenn. Ct. App. 1991), this court reviewed a trial court's denial of a motion to terminate alimony filed by an obligor who had a cancerous kidney removed, as a result of which he was no longer employed.  We affirmed the trial court's holding that the husband had assets which could be liquidated to pay support, but modified the judgment to provide that the obligation to pay alimony *in futuro* would terminate after one year.[3]  In *Richards v. Richards*, No. M2003-02449-COA-R3-CV, 2005 WL 396373 (Tenn. Ct. App. Feb. 17, 2005), the obligor husband sought to have his support obligation reduced in light of the fact that he was having to liquidate his retirement account in order to pay alimony.  We affirmed the trial court's denial of relief and, in so doing, rejected Mr. Richards' argument that *Bowman* entitled him to a reduction based on the fact that he had to liquidate a fixed resource in order to meet his obligation.[4]  The statute and cases are clear that assets other than income may be considered by the trial court in determining whether to modify an award of alimony to the same extent as they are considered in setting the initial award.

Mr. Osesek also argues that the trial court did not properly consider the fact that Ms. Osesek received the marital home, valued at $400,000 at the time of the hearing, as well as $320,000 in liquid assets when the parties divorced.  In discussing Ms. Osesek's need and the assets available to her, the court stated in pertinent part:

> At the time of the negotiation of the marital dissolution agreement, Ms. Osesek wanted to be the owner of the marital residence, a house with about

---

[2]  The record shows that, apart from earnings from employment,  Mr. Osesek had the following assets: home valued at $250,000, with a mortgage of $197,000; two unencumbered automobiles with a total value of $40,500; pension income of $3,100 per month; Smith Barney Investment Account totaling $725,000; 401K account valued at $115,000; savings account with a balance of $120,000; Certificates of Deposit worth $50,000.

[3]  In modifying the judgment, we acknowledged that "if [Mr. Bowman] is unable to work and, if he is forced to liquidate all of his assets in order to pay spousal support, he soon would have nothing from which to support himself." *Bowman*, 836 S.W.2d at 569.

[4]  We distinguished *Bowman* in part because Mr. Richards had remarried shortly after the divorce, thereby "voluntarily undertak[ing] the support of a new wife." *Richards*, 2005 WL 396373, at *10.

4,000 square feet, and only she resides there. Mr. Osesek takes a position that she should downsize and reduce her expenses. She said she had given consideration to that but, to downsize, there would be cost of sale of her house presently, which there is no mortgage and no encumbrance on it, cost of sale, and then cost of purchase of another home and then the moving, and she has concluded that that would not be a sufficient reduction in expenses when you consider the expenditure of expenses in making a relocation. And it was never anticipated that she would reduce or downsize the house in order to have less expenses. What did happen was, because of the value of the house, she did not get the same liquidated -- or monies or stocks or bonds that went to the husband.

As is clear from the quoted statement, the court did consider the non-income assets available to Ms. Osesek, as directed by Tenn. Code Ann. § 36-5-121(i)(7), as well as other factors, including Tenn. Code Ann. §§ 36-5-121(i)(1)(4) and (5); the court made the determination that Ms. Osesek's assets were not of such a nature or character that would support a modification of alimony. In making its determination, the court considered the fact that the assets held by Mr. Osesek were more liquid than those held by Ms. Osesek, a distinction that is permissible under the statute. Having considered the proper factors in accordance with Tenn. Code Ann. § 36-5-121(f)(2)(A), the court did not abuse its discretion in denying Mr. Osesek's petition.

While this case was pending on appeal, our Supreme Court decided *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011), in which the court discussed at length the genesis and evolution of the spousal support framework, particularly, the distinct types of alimony. Of relevance to the issues presented in this case is the following holding:

> The statutory framework for spousal support reflects a legislative preference favoring short-term spousal support over long-term spousal support, with the aim being to rehabilitate a spouse who is economically disadvantaged relative to the other spouse and achieve self-sufficiency where possible. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Bratton* [v Bratton], 136 S.W.3d at 605; *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003). Thus there is a statutory bias toward awarding transitional or rehabilitative alimony over alimony in solido or in futuro. While this statutory preference does not entirely displace long-term spousal support, alimony in futuro should be awarded only when the court finds that economic rehabilitation is not feasible and long-term support is necessary.

*Gonsewski*, 350 S.W.3d at 109 (citations omitted). Inasmuch as the parties and the court in this case did not have the benefit of the holding in *Gonsewski* when Mr. Osesek's petition to modify or terminate the alimony *in futuro* was heard, we deem it appropriate to remand the case for the court to consider whether a modification of alimony is warranted under the principles announced therein, which may include consideration of the likely duration of Mr. Osesek's assets.[5] Our decision to remand should not be construed as expressing an opinion as to whether a modification is warranted in any respect.

### B. Attorney Fees

The decision whether or not to award attorney fees is within the sound discretion of the trial court, and the court's decision will not be disturbed upon appeal unless that discretion has been abused. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Tenn. Code Ann. § 36-5-103(c) allows an obligee spouse to recover attorneys fees incurred in enforcing the support decree. *See Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586 Ttenn. Ct. App. Aug. 23, 2004). In our review of the record and the issues raised in this appeal, we cannot find that the court abused its discretion in awarding Ms. Osesek her attorney fees incurred in defending the petition.

### CONCLUSION

For the foregoing reasons, we AFFIRM the court's holding that Mr. Osesek's non-income assets are available to meet his alimony obligation and the award of counsel fees to Ms. Osesek. We VACATE the dismissal of the petition and remand for reconsideration in light of *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011).

_____
RICHARD H. DINKINS, JUDGE

---

[5] The trial court may, in its discretion, consider further evidence as part of its inquiry.